IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2024

IN RE WILLIAM C.

Appeal from the Juvenile Court for Pickett County
No. 1649      James Reed Brown, Judge

No. M2023-00646-COA-R3-PT

A father was found to have committed severe child abuse in a dependency and neglect case. The Department of Children's Services subsequently filed a petition to terminate the father's parental rights based on the previous finding of severe child abuse. Father asserts that the trial court erred in failing to continue the termination proceedings in his absence, in finding a ground for termination of his parental rights, and in determining that termination was in the child's best interest. Discerning no error, we affirm the trial court's decision.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

ANDY D. BENNETT, J., delivered the opinion of the Court, in which CARMA DENNIS MCGEE and KRISTI M. DAVIS, JJ., joined.

Kelly R. Williams, Livingston, Tennessee, for the appellant, Joseph C.

Jonathan Skrmetti, Attorney General and Reporter, and Katherine P. Adams, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

OPINION

FACTUAL AND PROCEDURAL BACKGROUND

This case concerns the termination of Joseph C.'s ("Father's") parental rights to his son, William C. (born in July 2021). William was born drug-exposed due to his mother, Sheyanne P., ("Mother") using various drugs throughout the pregnancy. Mother regularly tested positive for buprenorphine, methamphetamine, and amphetamines during the

pregnancy. At William's birth, Mother tested positive only for buprenorphine,[1] and William required treatment for symptoms associated with the drug withdrawal.

Because of Mother's positive drug test, the hospital contacted the Department of Children's Services ("DCS" or "the Department"). A DCS case manager responded to the hospital and spoke to both Mother and Father. Mother reported that she had used methamphetamine intravenously one to two times per week while she was pregnant with William. Father reported that he had not used drugs or alcohol recently, though he admitted that he had used drugs in the past. Father refused to submit to a drug screen and reported that he did not have any criminal history. However, after investigating further, DCS found that Father has an extensive criminal history, including charges for domestic assault. The Department case manager also found that Mother had been treated less than two weeks prior to William's birth for abdominal trauma and had reported that the cause of the trauma was Father kicking her in the stomach. As a result of these findings, William was removed from his parent's custody and placed in a kinship placement, where he has remained throughout these proceedings.

On July 29, 2021, DCS filed a petition in the Pickett County Juvenile Court to declare William dependent and neglected and to grant DCS temporary legal custody. As a basis for its petition, DCS alleged that William was born drug-exposed and had sustained trauma from Father kicking Mother in the stomach. The court entered a protective order placing William into the custody of DCS. On May 3, 2022, the court held a final hearing on the dependency and neglect petition. Neither Mother nor Father was present for this hearing. The court entered a default adjudication against both parents in light of the fact that both were served and failed to appear to defend in the matter. Due to Mother's drug use during her pregnancy, the court specifically found both Mother and Father had committed severe child abuse against William. The court based its finding of severe child abuse by Father on two facts: the fact that Father knew of Mother's drug use and failed to stop her from using drugs, and Mother's report that Father kicked her in the stomach while she was pregnant with William. Based upon the same set of facts, the court also found that it was in William's best interest to remain in the Department's custody. A written order was entered the next day. Father did not appeal this order, and it became a final order.

On September 23, 2022, DCS filed a petition in Pickett County seeking to terminate Father's parental rights. In its petition, DCS alleged three grounds for termination: (1) abandonment by failure to support or visit, (2) failure to manifest an ability or willingness to assume custody, and (3) severe child abuse. However, at the conclusion of the hearing,

---

[1] Buprenorphine is prescribed to treat opioid use disorder to limit withdrawal symptoms from use of other opioids, such as heroin or morphine. *Buprenorphine*, SUBSTANCE ABUSE AND MENTAL HEALTH SERV. ADMIN., https://www.samhsa.gov/medications-substance-use-disorders/medications-counseling-related-conditions/buprenorphine (last visited Mar. 8, 2024).

DCS conceded the first two grounds and based its termination action solely on severe child abuse.

The hearing on the petition was held over two days, January 17 and February 17, 2023. The second day of the hearing was originally to take place on February 3, but it was continued to the later date. At the first day of the hearing, the court heard testimony from the DCS caseworker assigned to William and from Father. The Department entered the final order from the previous adjudication of dependency and neglect into evidence to prove the ground of severe child abuse. Neither Father nor Mother was present at the second day of the hearing. Father's counsel objected to the hearing moving forward, saying that she was unsure if Father knew to be there that day. The court overruled this objection, stating that Father had come to the courthouse around the original date for day two of the hearing and was told to contact his attorney. On the second day of the hearing, William's foster parents testified. At the conclusion of the hearing, the court found that DCS had proven by clear and convincing evidence both the severe abuse ground and that termination was in William's best interest.

Sometime after this hearing, but before the court entered a final order, Father filed a motion to set aside the court's order pursuant to Tenn. R. Civ. P. 60.02.[2] The court entered an order denying this motion on March 6, 2023. The court entered a final order terminating Father's parental rights on April 4, 2023.[3] Father timely appealed, presenting the following issues for our review: (1) whether the trial court erred in not continuing the hearing in Father's absence; (2) whether the trial court properly determined that a ground existed to terminate Father's parental rights; and (3) whether the trial court properly determined that termination of Father's parental right was in William's best interest.

STANDARD OF REVIEW

When a court terminates a person's parental rights, the order has "the effect of severing forever all legal rights and obligations" between the parent and his or her child. Tenn. Code Ann. § 36-1-113(*l*)(1). A parent has a fundamental liberty interest in the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174-75 (Tenn. 1996) (citing *Nale v. Robertson*, 871 S.W.2d 674, 678 (Tenn. 1994)). Even though this right is fundamental, it is not absolute in nature, and this right may be forfeited by a parent who abandons or otherwise conducts themselves in a manner that substantially harms the child. *In re Angela E.*, 303 S.W.3d at 250. In Tennessee, termination proceedings are governed by statute.

---

[2] This motion is not included in the record. Only the court's order denying this motion is included.

[3] The trial court also terminated Mother's parental rights. She did not appeal and is, therefore, not a party to this appeal.

*Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004). The Tennessee General Assembly has laid out the framework for "'those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought.'" *In re Jacobe M.J.*, 434 S.W.3d 565, 568 (Tenn. Ct. App. 2013) (quoting *In re W.B., IV.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005)).

The grounds and proceedings by which parental rights may be terminated are found in Tenn. Code Ann. § 36-1-113. The first determination the trial court must make is whether at least one ground exists for termination. Tenn. Code Ann. § 36-1-113(c)(1); *In re Marr*, 194 S.W.3d 490, 498 (Tenn. Ct. App. 2005). Second, the court determines whether termination is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c)(2); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The petitioner bears the burden of proving both steps of the termination process by clear and convincing evidence. *In re Angela E.*, 303 S.W.3d at 250. This is because "parents are constitutionally entitled to fundamentally fair procedures in termination proceedings." *In re Carrington H.*, 483 S.W.3d 507, 522 (Tenn. 2016) (citing *Santosky v. Kramer*, 455 U.S. 745, 754 (1982)).

The clear and convincing evidence standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *Id.* (citations omitted). The use of this standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Therefore, when evaluating a court's decision to terminate parental rights, we apply the following principles:

> An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the

evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 523-24.

ANALYSIS

I.      Father's challenge to the court's denial of a continuance

Father first argues that the trial court erred when, on the second day of the hearing, it denied his request for a continuance based on lack of notice.[4] "Due process requires that 'all parties to litigation . . . receive notice of important hearings and other proceedings.'" *In re A.W.*, No. M2020-00892-COA-R3-PT, 2021 WL 4075102, at *5 (Tenn. Ct. App. Sept. 8, 2021) (quoting *Bryant v. Edwards*, 707 S.W.2d 868, 870 (Tenn. 1986)). The notice must be "'reasonably calculated[,] under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Keisling v. Keisling*, 92 S.W.3d 374, 377 (Tenn. 2002)).

We must, therefore, determine whether Father had adequate notice of the hearing. There is no question here that Father was represented by an attorney during the termination proceedings, and the original date for the second day of the hearing was continued on a conference call Father's attorney participated in after Mother's attorney could not attend. Father's attorney was also present at the second day of the hearing. "The question of when notice to a litigant's or former litigant's attorney constitutes reasonable notice to the client himself turns upon the nature of their relationship at that time. If the attorney still represents the client, then notice is sufficient." *Jarvis v. Jarvis*, 664 S.W.2d 694, 696-97 (Tenn. Ct. App. 1983) (citation omitted). Therefore, we cannot say that Father lacked notice of the second hearing date.

---

[4] Father cites to "[Tenn. R. Civ. P.] 112(a)(1)" as requiring a court to ensure that all necessary parties are present before proceeding. As Tennessee's Rules of Civil Procedure do not have a rule 112, we deduce that Father intended to reference Tenn. R. Juv. P. Rule 112(a)(1). The Tennessee Rules of Juvenile Procedure, however, do not apply to termination proceedings. *See* Tenn. R. Juv. P. 101(3)(A) ("The Tennessee Rules of Civil Procedure shall govern the following proceedings . . . the termination of parental rights pursuant to T.C.A. § 36-1-113.").

Having determined that Father had notice of the hearing, we now turn to whether the court abused its discretion by not continuing the hearing.[5] The decision of whether to grant or deny a motion for a continuance is fully within the discretion of the court. *Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). We have previously been instructed by our Supreme Court that, "[u]nder the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). When applying the abuse of discretion standard, we conduct a less rigorous review of the trial court's decision, and there is a decreased likelihood that the decision will be overturned on appeal. *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). A reviewing court is not allowed to substitute its own judgment for the judgment of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). This does not mean, however, that discretionary decisions are immune from meaningful review. *Lee Med., Inc.*, 312 S.W.3d at 524. Such decisions "must take the applicable law and the relevant facts into account." *Id.* Therefore, a discretionary decision will not be upheld if "it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Id.*

The party seeking a continuance bears the burden of establishing circumstances exist warranting the granting of a continuance. *Osagie v. Peakload Temp. Servs.*, 91 S.W.3d 326, 329 (Tenn. Ct. App. 2002). When considering a motion for a continuance, courts consider the following factors, among others "(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted." *Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003) (footnotes omitted). We review "the underlying factual findings using the preponderance of the evidence standard contained in Tenn. R. App. P. 13(d) and [we] review the lower court's legal determinations de novo without any presumption of correctness." *Lee Med.*, 312 S.W.3d at 525.

Applying the *Terry* factors, we cannot say that the trial court abused its discretion in overruling Father's attorney's objection to the second day of proceedings continuing without Father. The proceeding had been pending for several months at this point. Counsel provided no reason for Father's absence apart from him not knowing about the second day of the hearing being rescheduled. However, as stated above, Father had notice of the new hearing date through his attorney participating in the conference call continuing the second

---

[5] Father avers that he filed a motion to reconsider pursuant to Tenn. R. Civ. P. 60.02 (which addresses the grounds for relief from a final judgment) after the second day of the hearing. It appears from Father's brief that he appeals the trial court's overruling of his objection to the hearing proceeding (which was, essentially, a request to continue the hearing), not the court's denial of his Rule 60 motion.

hearing date and as evidenced by Father's attorney's presence at the second hearing. Furthermore, the record indicates that Father went to the courthouse on or about February 5 and was told to contact his attorney. The record contains no evidence of diligence on Father's part, either to contact his attorney or to request the continuance if he was unable to attend the hearing. Father does not assert any prejudice in his brief and we discern none from the record. We find no abuse of discretion in the trial court's decision here.[6]

## II.     Father's challenge to the severe child abuse finding

We now turn to Father's argument that the court erred in finding that DCS proved by clear and convincing evidence the existence of the termination ground found in Tenn. Code Ann. § 36-1-113(g)(4), which provides that parental rights may be terminated if the parent has been found to have committed severe child abuse as defined in Tenn. Code Ann. § 36-1-102 "under any prior order of a court."

In the juvenile court's May 4, 2022, order adjudicating William dependent and neglected, the court found that Father committed severe child abuse as defined in Tenn. Code Ann. § 37-1-102(27)(A),[7] (E).[8] Father did not appeal that order, and it became a final judgment. This Court has held, under the doctrine of res judicata, that a final order containing a finding of abuse cannot be attacked in subsequent actions. *See*, *e.g.*, *In re Heaven L.F.*, 311 S.W.3d 435, 439 (Tenn. Ct. App. 2010); *State Dept. of Human Serv. v. Tate*, No. 01-A-01-9409-CV-00444, 1995 WL 138858, at *5 (Tenn. Ct App. Mar. 31, 1995). "The doctrine of *res judicata* applies when 'an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction.'" *In re Heaven L.F.*, 311 S.W.3d at 439 (quoting *Galbreath v. Harris*, 811 S.W.2d 88, 90 (Tenn. Ct. App. 1990)). Father and DCS were both parties to the dependency and neglect hearing, and the issue of whether Father committed severe child abuse was decided by the court. Therefore, the prior determination that Father committed severe child abuse is res judicata,

---

[6] We have previously affirmed a trial court's decision not to grant a continuance in a termination case. *See In re Anna W.*, No. W2022-00657-COA-R3-PT, 2022 WL 17820763, at *3 (Tenn. Ct. App. Dec. 20, 2022).

[7] Subsection (27)(A) of the statute defines severe child abuse as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]" Tenn. Code Ann. § 37-1-102(27)(A).

[8] Subsection (27)(E) of the statute defines severe child abuse as "[k]nowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child[.]" Tenn. Code Ann. § 37-1-102(27)(B).

and the trial court properly found by clear and convincing evidence that a ground for termination existed pursuant to Tenn. Code Ann. § 36-1-113(g)(4).

III.     Best interest analysis

We now turn to the issue of whether the termination is in the best interests of the child. In making this determination, courts are directed by statute to consider the nonexclusive factors found in Tenn. Code Ann. § 36-1-113(i)(1). Under the statute, the court "shall consider" these factors, *In re Angela E.*, 303 S.W.3d at 251, but courts are not required to find that each of these factors exists before ultimately concluding that it is in the best interest of the child to terminate a parent's rights. *In re M.A.R.*, 183 S.W.3d at 667. The relevancy and weight of each factor is unique to each individual case, and courts should not undergo a mechanical determination of each of the statute's factors. *In re Marr*, 194 S.W.3d at 499. Consideration of these factors is to be taken from the child's perspective, not the parent's perspective, and in some instances, a court's consideration of one factor alone may be determinative to the outcome of the analysis. *Id.* (citing *In re Audrey S.*, 182 S.W.3d at 878). Even if one factor is determinative, the court must still consider each factor and any relevant proof. *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

When a court is undergoing the best interest analysis, the facts must be proven by "'a preponderance of the evidence, not by clear and convincing evidence.'" *Id.* at 681 (quoting *In re Kaliyah S.*, 455 S.W.3d 553, 555 (Tenn. 2015)). After a court makes these factual findings, "'the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s].'" *Id.* (quoting *In re Kaliyah S.*, 455 S.W.3d at 555).

Factor A concerns "[t]he effect a termination of parental rights will have on the child's critical need for stability and continuity of placement throughout the child's minority" Tenn. Code Ann. § 36-1-113(i)(1)(A). We agree with the trial court's determination that terminating Father's parental rights will have a positive impact on William's need for stability and continuity of placement throughout his minority because William bonded with the foster parents and accepted them as his parents. *See id.* § 36-1-113(i)(1)(H). ("Whether the child has created a healthy parental attachment with another person or persons in the absence of the parent."). In contrast, returning William to Father would have a detrimental effect on William. In particular, Father does not know William's needs as Father never visited and did not cultivate a relationship with William. *See id.* § 36-1-113(i)(1)(C), (D), (E) ("Whether the parent has demonstrated continuity and stability in meeting the child's basic material, education, housing, and safety needs;" "[w]hether the parent and child have a secure and healthy parental attachment, and if no, whether there is a reasonable expectation that the parent can create such attachment;" and "[w]hether the parent has maintained regular visitation or other contact with the child and used the visitation or other contact to cultivate a positive relationship with the child."). Indeed,

Father stated it would be best for William to stay with his foster parents until Father could establish adequate stability.

Next, under Factor J, we consider "[w]hether the parent has demonstrated such a lasting adjustment of circumstances, conduct, or conditions to make it safe and beneficial for the child to be in the home of the parent, including consideration of whether there is criminal activity in the home or by the parent, or the use of alcohol, controlled substances, or controlled substance analogues which may render the parent unable to consistently care for the child in a safe and stable manner." *Id.* § 36-1-113(i)(1)(J). Nothing in the record shows that Father made any lasting changes that would make it safe and beneficial for William to be in his home. Father has accrued criminal charges since William's birth and he refused to cooperate with DCS's requests that he submit to drug screens. *See id.* § 36-1-113(i)(1)(M) ("Whether the parent has demonstrated a sense of urgency in establishing paternity of the child, seeking custody of the child, or addressing the circumstance, conduct, or conditions that made an award of custody unsafe and not in the child's best interest.").

Factor N pertains to "[w]hether the parent, or other person residing with or frequenting the home of the parent, has shown brutality or physical, sexual, emotional, or psychological abuse or neglect toward the child or any other child or adult." *Id.* § 36-1-113(i)(1)(N). The juvenile court found that Father committed severe child abuse against William when he kicked Mother in the stomach. Like the trial court, we give significant weight to this factor.

Factor O considers "[w]hether the parent has ever provided safe and stable care for the child or any other child." *Id.* § 36-1-113(i)(1)(O). Father had never provided care for another child or William. Although Father was employed during the pendency of this case, he failed to make consistent child support payments. *See id.* § 36-1-113(i)(1)(S) ("Whether the parent has consistently provided more than token financial support for the child."). Notably, as the trial court found, he did not start making child support payments until shortly before the termination hearing.

The remaining factors do not weigh in favor of or against termination. Thus, based on the foregoing, we conclude that clear and convincing evidence establishes that termination of Father's parental rights is in the child's best interest.

CONCLUSION

The judgment of the trial court is affirmed. Costs of this appeal are assessed against the appellant, Joseph C., for which execution may issue if necessary.

/s/ Andy D. Bennett
ANDY D. BENNETT, JUDGE